UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE

```
*******************************************
                                          *
Scott F. Carmichael,                      *
                                          *
            Plaintiff                     *
                                          *
v.                                        *
                                          *
Contoocook Artesian Well Co., Inc.,       *
                                          *
            Defendant                     *
                                          *
*******************************************
```

## COMPLAINT (Jury Trial Requested)

NOW COMES the plaintiff Scott Carmichael, by and through his attorneys Douglas, Leonard & Garvey, P.C., and respectfully submits the within Complaint, stating as follows:

**I.      Parties**

1. The plaintiff Scott Carmichael is a former employee of the defendant and resides at 845 Clement Hill Road, Contoocook, New Hampshire.

2. The defendant Contoocook Artesian Well Co., Inc. is the former employer of the plaintiff and is a New Hampshire corporation with a principal place of business located at 87 Garrison Lane, Hopkinton, New Hampshire.

**II.     Jurisdiction and Venue**

3. The Court has subject matter jurisdiction over this matter pursuant to 42 U.S.C. §12117.  The Court has supplemental jurisdiction over the plaintiff's State law claims.

4. Venue is proper because both the plaintiff and the defendant because the acts and omissions giving rise to this action occurred within this judicial district.

**III.    Facts**

5.    Mr. Carmichael became employed with the defendant in or around February of 2002.

6.    On or about July 29, 2014, the defendant employed Mr. Carmichael as a service technician. Mr. Carmichael's job duties at this time primarily consisted of driving to well sites and then installing and/or repairing well pumps, lines from wells to houses, and tanks.

7.    Mr. Carmichael suffered a severe work-related injury on or about July 29, 2014, when a metal pipe, while under hydraulic pressure, struck him in the left facial area near the supraorbital ridge.

8.    The work-related injury caused Mr. Carmichael to suffer a traumatic brain injury and caused him to develop disabling impairments substantially limiting him in several major life activities, including but not limited to attention, concentration, thinking, memory, and seeing.

9.    Mr. Carmichael sought and received workers' compensation benefits in connection with his work injury. He was considered totally disabled from work through approximately January 19, 2015, during which period he received temporary total disability benefits from the workers' compensation carrier. At or about this time Mr. Carmichael's doctors released him to work with certain restrictions, including that he not drive. Mr. Carmichael returned to work part-time on or about January 20, 2015, at which point he began receiving temporary partial disability benefits from the carrier.

10.    Over the course of the next year, Mr. Carmichael's limitations associated with his work-related injury lessened, and his work capacity increased. Despite the fact that Mr. Carmichael had the physical ability to perform the essential functions of his job as a service technician with reasonable accommodation, the defendant often refused to let him perform his

job, instead grounding him in the office.  Restricted from going out in the field, Mr. Carmichael often found himself searching for things to do in the office during his work hours.  He would wash and clean things.

11.     Mr. Carmichael began to suspect that the defendant sought to rid him from its employ by refusing to allow him to do his job, and instead giving him menial and sometimes no work assignments.  That the defendant had this design was borne out when, in the early months of 2016, Mr. Carmichael received communications from the defendant's workers' compensation carrier urging him to accept a lump sum settlement—pursuant to which he would resign his employment with the defendant.  Mr. Carmichael had built a career with the defendant.  He did not wish to resign and declined the offer from the defendant's carrier.

12.     In May of 2016, Mr. Carmichael attempted to initiate a dialogue with the defendant regarding reasonable accommodations for his disabling impairments.  On or about May 5, 2016, Mr. Carmichael's treating physician, Dr. McLellan, completed a New Hampshire Workers' Compensation Medical Form in which he wrote that Mr. Carmichael "need(ed) additional cognitive accommodations."  Exhibit A.  Dr. McLellan wrote a request for the defendant to contact him.  Mr. Carmichael hand-delivered the Form containing the doctor's request to the defendant.  The defendant, however, failed and refused to contact Dr. McLellan, ignoring the doctor's request.

13.     On or about May 12, 2016, Dr. McLellan completed another New Hampshire Workers' Compensation Medical Form for Mr. Carmichael in which the doctor again wrote that Mr. Carmichael "need(ed) additional cognitive accommodations."  Exhibit B.  Dr. McLellan added a request that the defendant send him "a list of proposed job tasks" for Mr. Carmichael. Id.  Once again, Mr. Carmichael hand-delivered the Form containing the doctor's request to the

defendant. Once again, the defendant ignored the doctor's request and never provided the doctor the list of proposed job tasks that the doctor requested.

14. Rather than accommodate Mr. Carmichael's disabling impairments, the defendant seized on a pretext to fire him. On or about October 20, 2016, Mr. Carmichael reported for work at approximately 8:00 a.m. and received an assignment to clean the defendant's digger. Mr. Carmichael determined that the shop bay would be a suitable place to perform this task, but he noted that the bay was covered in leaves, so he decided that he would first clean the leaves out so he could work on the digger. When an owner of the defendant company, Rick Patenaude, arrived at about 8:25 a.m., he told Mr. Carmichael to punch out and go home, ostensibly because he was not cleaning the digger as instructed. Mr. Carmichael attempted to explain that he was simply preparing to clean the digger, but Mr. Patenaude would not listen to Mr. Carmichael remained resolute in his order that Mr. Carmichael punch out and go home.

15. The next day, the defendant fired Mr. Carmichael.

16. Mr. Carmichael timely filed a Charge of Discrimination with the New Hampshire Commission for Human Rights, which was dually filed with the United States Equal Employment Opportunity Commission (EEOC).

17. After the Charge had been pending before the administrative agencies for over six (6) months, the plaintiff notified the New Hampshire Commission for Human Rights of his intent to file a civil action as allowed by RSA 354-A:21-a.

18. The plaintiff further requested a Notice of Right to Sue from the EEOC, which he received on February 24, 2018. Exhibit C. The plaintiff files this lawsuit within 90 days of receiving the Notice of Right to Sue, as allowed.

## COUNT I

### (Violation of Americans With Disabilities Amendments Act)

19. The allegations of the preceding paragraphs are incorporated herein by reference.

20. At all times relevant to this action, Mr. Carmichael was a qualified individual with a disability who could perform the essential functions of his job with reasonable accommodation. Mr. Carmichael had disabling impairments. He further had a record of disabling impairments, and the defendant regarded him as having disabling impairments.

21. The defendant discriminated against Mr. Carmichael on the basis of his disability by refusing to allow him to perform the essential functions of his service technician job, instead relegating him to menial tasks or giving him nothing to do during work hours.

22. The defendant also discriminated against Mr. Carmichael on the basis of his disability by refusing his requests that the defendant engage in an interactive process with his doctor to discuss reasonable accommodations that would help him perform the essential functions of his job.

23. The defendant further discriminated against Mr. Carmichael on the basis of his disability by firing him.

24. The defendant also retaliated against Mr. Carmichael for engaging in the protected activity of requesting reasonable accommodations by firing him.

25. As a direct and proximate result of the defendant's disability discrimination and retaliation, Mr. Carmichael has suffered and continues to suffer damages, including but not limited to lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation, inconvenience and loss of enjoyment of life. The plaintiff is further entitled to recover his reasonable attorney's fees and costs, and is also entitled to punitive damages because

the defendant acted with malice and with willful or reckless disregard for his federally protected rights.

## COUNT II

### (Violation of RSA 354-A)

26. The allegations of the preceding paragraphs are incorporated herein by reference.

27. At all times relevant to this action, Mr. Carmichael was a qualified individual with a disability who could perform the essential functions of his job with reasonable accommodation. Mr. Carmichael had disabling impairments. He further had a record of disabling impairments, and the defendant regarded him as having disabling impairments.

28. The defendant discriminated against Mr. Carmichael because of his disability by refusing to allow him to perform the essential functions of his service technician job, instead relegating him to menial tasks or giving him nothing to do during work hours.

29. The defendant also discriminated against Mr. Carmichael because of his disability by refusing his requests that the defendant engage in an interactive process with his doctor to discuss reasonable accommodations that would help him perform the essential functions of his job.

30. The defendant further discriminated against Mr. Carmichael because of his disability by firing him.

31. The defendant also retaliated against Mr. Carmichael for engaging in the protected activity of requesting reasonable accommodations by firing him.

32. As a direct and proximate result of the defendant's disability discrimination, Mr. Carmichael has suffered and continues to suffer damages, including but not limited to lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation, inconvenience

and loss of enjoyment of life. The plaintiff is further entitled to recover his reasonable attorney's fees and costs, and is also entitled to enhanced compensatory damages because the defendant acted with willful or reckless disregard of his rights under RSA 354-A.

## COUNT III

### (Wrongful Discharge)

33. The allegations of the preceding paragraphs are incorporated herein by reference.

34. The defendant fired Mr. Carmichael with bad faith and malice, firing him without warning and without allowing him to explain that he was not engaged in insubordination when he was raking leaves on October 20, 2016, but was rather preparing to do the job that the defendant had asked him to do a mere 25 minutes or so before telling him to punch out and go home.

35. The defendant fired Mr. Carmichael for performing acts that public policy encourages, including requesting a dialogue on reasonable accommodations that would help him perform the essential functions of his job, and refusing entreaties from the defendant's workers' compensation carrier to resign his employment. Public policy encourages persons such Mr. Carmichael with disabling impairments to seek a dialogue with their employers about accommodations to help them to perform the essential functions of their jobs, as Mr. Carmichael did. Furthermore, public policy encourages workers' compensation claimants such as Mr. Carmichael to refuse entreaties to resign their employment as Mr. Carmichael did, if the employee wishes to continue working and has no desire to resign.

36. As a direct and proximate result of the defendant's wrongful discharge of the plaintiff, the plaintiff has suffered and continues to suffer damages, including but not limited to lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation and

loss of enjoyment of life.  The plaintiff is further entitled to enhanced compensatory damages based on the wanton, malicious and oppressive nature of the defendant's conduct in firing him.

WHEREFORE, the plaintiff Scott Carmichael respectfully prays this Honorable Court:

A.	Schedule this matter for trial by jury, and after trial;

B.	Find the defendant liable for disability discrimination under the Americans With Disabilities Amendments Act;

C.	Find the defendant liable for retaliation under the Americans With Disabilities Amendments Act;

D.	 Find the defendant liable for disability discrimination under the New Hampshire Law Against Discrimination;

E.	Find the defendant liable for retaliation under the New Hampshire Law Against Discrimination;

F.	Find the defendant liable for wrongful discharge;

G.	Award the plaintiff damages for lost wages, lost earning capacity, and lost employment benefits;

H.	Award the plaintiff damages for emotional distress, humiliation, inconvenience and loss of enjoyment of life;

I.	Award the plaintiff punitive damages;

J.	Award the plaintiff enhanced compensatory damages;

K.	Award the plaintiff his reasonable attorney's fees;

L.	Award the plaintiff interest and costs; and

M.	Grant such other and further relief as is just and equitable.

|  |  |
|---|---|
|  | Respectfully submitted,<br>SCOTT CARMICHAEL<br>By his attorneys,<br>DOUGLAS, LEONARD & GARVEY, P.C. |
| Dated: May 25, 2018 | /s/ Benjamin T. King<br>Benjamin T. King, NH Bar #12888<br>14 South Street, Suite 5<br>Concord, N.H. 03301<br>(603) 224-1988<br>benjamin@nhlawoffice.com |